Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re **Thrivify, LLC**, dba The Lodge in Sisters, LLC,<br><br>            Debtor. | Case No. 23-30538-dwh11 |
| **Revivify, LLC**, a Colorado limited liability company, et al.,<br><br>            Plaintiffs,<br><br>   v.<br><br>**Thrivify LLC**, an Oregon limited liability company, et al.,<br><br>            Defendants. | Adv. Pro. No. 23-03027-dwh<br><br>MEMORANDUM DECISION AFTER TRIAL[1] |

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION AFTER TRIAL

I.   Introduction

In this action, plaintiffs claim that defendants breached a prepetition settlement term sheet, and plaintiffs seek relief including specific performance and damages. Thrivify, LLC, the debtor in this involuntary chapter 11 bankruptcy case, is a party to the term sheet, which the chapter 11 trustee wants to reject.

This decision explains my rulings both in this action and on the rejection motion. Citations to papers filed in this action are to the paper's ECF number in this action; citations to papers filed in the main case are to both the number of the main case and the paper's main-case ECF number.

For the reasons below, I hold that (1) the trustee is entitled to reject the term sheet; (2) because the term sheet is rejected and cannot be enforced against the estate, it is not specifically enforceable by plaintiffs; and (3) plaintiffs have not proved that they suffered damages from any breach by defendants.

II.   Background

This action addresses whether a term sheet among the direct or indirect member-owners of Thrivify was a formed and enforceable contract and whether plaintiffs are entitled to specific performance or damages. Plaintiffs are Mark and Anita Adolf; Jeff Carter; Retrac, LLC; and Revivify, LLC. Defendants are Terence Christian (Chris) Blackburn; Sean Adrian Blackburn; Clutch Industries, Inc.; SAK Oregon, LLC; Steelhead Properties,

LLC; TDLS, LLC; Thrive 1967, LLC; Thrive 1969, LLC; and Thrivify. Clutch and Steelhead are controlled by the Blackburns. SAK is the state-court receiver for Thrivify. Because the Blackburns share a last name, I will refer to them as Sean and Chris. I will refer to Thrive 1967 and Thrive 1969 as the Thrive LLCs.

Unless I specify otherwise, later references in this decision to "defendants" mean defendants other than SAK and Thrivify.

### III. Facts

#### A. *Thrivify's members and property*

Thrivify has five members: Revivify, Retrac, the Thrive LLCs, and TDLS.[2] The members are owned or controlled, directly or indirectly, by the following individuals: Revivify by the Adolfs, Retrac by Carter, Thrive 1967 by Sean, Thrive 1969 by Chris, and TDLS by Peter Hoover.[3] The Blackburns directly or indirectly control Clutch and Steelhead.

Thrivify owns real property in Sisters, Oregon, improved with an assisted living facility operated by its subsidiary.[4] The facility is called the lodge.

#### B. *State-court litigation*

Beginning in December 2020, Thrivify, its members, and Clutch and Carter were litigants in the Deschutes County, Oregon, Circuit court in three actions. In No. 20CV43877, Thrivify, through SAK, sued the Thrive LLCs and

---

[2] ECF No. 76 at 1 ¶ 3.
[3] ECF No. 76 at 1–2 ¶ 4.
[4] ECF No. 76 at 1 ¶ 1.

Page 3 – MEMORANDUM DECISION AFTER TRIAL

TDLS for not less than $2.5 million as damages for allegedly breaching their duties of loyalty, care, and good faith and fair dealing to Thrivify.[5] The complaint in that action includes several allegations about the Blackburns and Clutch, without naming them as defendants. According to the complaint, (1) Thrivify contracted with Clutch to develop and construct the assisted living facility, referred to as the project; the Blackburns held ownership interests in Clutch, and Chris was president of Clutch;[6] (2) the Thrive LLCs breached their duty of loyalty to Thrivify by causing Clutch to breach the development agreement, injuring Thrivify;[7] and (3) TDLS breached its fiduciary duty to Thrivify by aggressively pressuring Thrivify to agree to pay Clutch excess amounts.[8]

On March 14, 2022, the state court appointed SAK as receiver for Thrivify.[9] A report SAK filed in state court on January 31, 2023, included a Thrivify balance sheet showing as an asset a "receivable from Clutch" of $181,484.[10]

### C. Term sheet

The Partner Buyout and Settlement Term Sheet was signed on October 13 and 14, 2022.[11] The Thrive LLCs agreed to buy Retrac's and Revivify's

---

[5] ECF No. 76 at 4 ¶ 9; ECF No. 81-54 Trial (Tr.) Ex. 153.
[6] ECF No. 81-54 Trial Exhibit (Tr. Ex.) 153 at 2 ¶ 7.
[7] ECF No. 81-54 Tr. Ex. 153 at 3–5 ¶¶ 12, 17.
[8] ECF No. 81-54 Tr. Ex. 153 at 4–5 ¶¶ 13, 18.
[9] ECF No. 76 at 1, 3 ¶¶ 2, 10.
[10] ECF No. 81-38 Tr. Ex. 137 at 5 ¶ 16 Ex. B at 1.
[11] ECF No. 76 at 12 ¶ 38.

Page 4 – MEMORANDUM DECISION AFTER TRIAL

membership interests in Thrivify,[12] paying $1.2 million for Retrac's[13] and $1.5 million for Revivify's.[14] Part of each price was to be paid in installments guaranteed by Chris. The payments to Retrac were to be secured by Thrivify's bare ground (not the land with the lodge),[15] and those to Revivify were to be secured by property owned by Steelhead.[16]

The following term-sheet provisions require releases:

> The parties . . . , including Thrivify LLC will agree to effectuate a full and complete dismissal of all claims with prejudice including all rights to fees and expenses, and will execute a full and complete release of all claims in [the litigation]. . . . The Settlement Agreement will include a full and complete release of all claims, known or unknown, between each and all of the parties to this agreement (including SAK Oregon, LLC) . . . .[17]

### D.  *Longform agreement*

On October 21, 2022, a lawyer for the Thrive LLCs circulated proposed drafts of five documents to carry out the term sheet: a Settlement and Purchase Agreement (which the parties call the longform settlement agreement and I will call the longform agreement) and for each of Retrac and Revivify, a promissory note and trust deed.[18] Defendants named as parties to the longform agreement are Chris, Clutch, SAK, TDLS, and the Thrive LLCs; Sean is not a party to the agreement.

---

[12] ECF No. 84-26 Tr. Ex. 26 at 1 ¶ 1.
[13] ECF No. 84-26 Tr. Ex. 26 at 1 ¶ 3.
[14] ECF No. 84-26 Tr. Ex. 26 at 1 ¶ 2.
[15] ECF No. 84-26 Tr. Ex. 26 at 1 ¶ 3.
[16] ECF No. 76 at 15 ¶ 48; ECF No. 84-26 Tr. Ex. 26 at 1 ¶ 2.
[17] ECF No. 84-26 Tr. Ex. 26 at 3 ¶ 8.
[18] ECF No. 76 at 14–15 ¶¶ 46, 48; ECF No. 84-31 Tr. Ex. 31.

Although the term sheet says the Retrac and Revivify membership interests would be bought by both Thrive LLCs, the longform agreement says that the purchaser would be Thrive 1969 (Chris's LLC) alone.

On November 14, 2022, a lawyer for Revivify, on behalf of all plaintiffs, circulated by email a markup of the Thrive LLCs' draft longform agreement. Plaintiffs' markup removed Clutch, SAK, and Thrivify as parties (leaving defendants Chris, TDLS, and the Thrive LLCs) but provided that SAK would sign for Thrivify as acknowledging the agreement.[19]

### E. *Bankruptcy case*

On March 15, the Blackburns and Clutch filed the involuntary petition against Thrivify, initiating the chapter 11 main case to which this action relates.[20] The court approved the United States trustee's appointment of Kenneth Eiler as chapter 11 trustee.[21] On April 14, 2023, the court entered an order for relief and designated Revivify, as Thrivify's manager, as the entity to perform the duties imposed on the debtor.[22]

On May 12, 2023, Thrivify filed required documents, including schedules of assets and executory contracts, signed by Mark Adolf as manager. The scheduled assets include the term sheet[23] and "a claim against Clutch

---

[19] ECF No. 76 at 19 ¶ 61; ECF No. 84-43 Tr. Ex. 43.
[20] ECF No. 76 at 23 ¶ 78; No. 23-30538 ECF No. 1.
[21] No. 23-30538 ECF Nos. 30–32.
[22] No. 23-30538 ECF No. 38.
[23] ECF No. 76 at 23–24 ¶ 79; ECF No. 81-47 Tr. Ex. 146 at 2; No. 23-30538 ECF No. 66 Sched. A/B at 4 item 74.

Industries Inc. for an amount not less than $5,000,000 to be utilized, among other things, for setoff against Clutch and Blackburn claims"[24] The term sheet is also on the schedule of executory contracts.[25]

### F. *This action*

The complaint has four claims, which it denominates as for declaratory judgment,[26] breach of contract,[27] specific performance,[28] and reformation.[29] The claim for declaratory judgment requests a declaration that the longform agreement and the loan and security documents as revised by plaintiffs "constitute binding contracts."[30] The claim for reformation requests that, if necessary, the term sheet be reformed to bind Chris and Steelhead.[31]

Answers were filed by all defendants except Thrivify;[32] an answer was also filed by Eiler.[33]

At trial, plaintiffs submitted a proposed further revision of the longform agreement. It provides for Eiler to sign and perform the agreement on behalf of Thrivify.[34]

---

[24] ECF No. 76 at 23–24 ¶ 79; ECF No. 81-47 Tr. Ex. 146 at 2; No. 23-30538 ECF No. 66 Sched. A/B at 4 item 75.
[25] ECF No. 76 at 23–24 ¶ 79; ECF No. 81-47 Tr. Ex. 146 at 2; No. 23-30538 ECF No. 66 Sched. G at 1 item 2.1.
[26] ECF No. 1 at 43–44, 51 ¶¶ 180–83, A.
[27] ECF No. 1 at 44–47, 51–52 ¶¶ 184–99, B.
[28] ECF No. 1 at 47–48, 52–53 ¶¶ 200–03, C.
[29] ECF No. 1 at 48–51, 53 ¶¶ 204–20, D.
[30] ECF No. 1 at 44 ¶ 181(4).
[31] ECF No. 1 at 50–51 ¶ 220.
[32] ECF Nos. 9, 10, 12, 22.
[33] ECF No. 13.
[34] ECF No. 89-1 Tr. Ex. 203.

Page 7 – MEMORANDUM DECISION AFTER TRIAL

Also at trial, the parties acknowledged that, six days earlier, Eiler had moved to reject the term sheet as an executory contract.[35] The parties addressed the rejection motion and its relation to this action at hearings on March 6,[36] April 8,[37] May 17,[38] and August 4, 2024.[39]

The parties also acknowledged at trial that they expected Eiler to move in the main case for authority to sell estate property, including the facility. After trial, he did so[40] and obtained approval of sale procedures[41] and a sale.[42] At the August 5 hearing, the parties agreed that the sale had closed.

## IV. Analysis

### A. *Jurisdiction*

A district court has jurisdiction of all civil proceedings arising in or related to a case under title 11 of the United States Code (a bankruptcy case).[43] The district court may refer bankruptcy cases and proceedings to the district's bankruptcy judges.[44]

Bankruptcy judges may hear and determine core proceedings arising in a bankruptcy case, including matters concerning estate administration.[45] With

---

[35] No. 23-30538 ECF No. 122.
[36] ECF No. 137.
[37] ECF No. 157.
[38] ECF No. 185.
[39] ECF No. 193.
[40] No. 23-30538 ECF No. 131.
[41] No. 23-30538 ECF No. 161.
[42] No. 23-30538 ECF No. 190.
[43] 28 U.S.C. § 1334(b).
[44] 28 U.S.C. § 157(a).
[45] 28 U.S.C. § 157(b)(2)(A).

Page 8 – MEMORANDUM DECISION AFTER TRIAL

party consent, bankruptcy judges may hear and determine related-to proceedings.[46]

The district court has referred to the bankruptcy judges of this district all bankruptcy cases and proceedings.[47]

For the reasons stated on the record at the hearing on December 14, 2023, this court has related-to jurisdiction over the claims in this action.[48] The parties[49] and Eiler[50] have consented to entry of final orders or judgment by this court. The rejection motion is an arising-in proceeding concerning estate administration or otherwise a core proceeding.

The court may enter final orders or judgment both in this action and on the rejection motion.

### B. Choice of law

When a federal court decides which state's law applies to an issue governed by state law, it must apply the choice-of-law rules of the forum state.[51] Because this court sits in Oregon, it applies Oregon's choice-of-law rules.

---

[46] 28 U.S.C. § 157(c)(2).
[47] LR 2200-2(a).
[48] ECF No. 43.
[49] ECF No. 1 at 4 ¶ 9 (plaintiffs); ECF No. 2 at 2 ¶ 4 (Blackburns and Steelhead); ECF No. 10 at 2 ¶ 4 (TDLS); ECF No. 12 at 2 ¶ 4 (Clutch and Thrive LLCs); ECF No. 22 at 2 (SAK).
[50] ECF No. 17 at 2.
[51] Kohlrautz v. Oilmen Participation Corp., 441 F.3d 827, 833 (9th Cir. 2006).

Page 9 – MEMORANDUM DECISION AFTER TRIAL

Here, no party has argued that, under Oregon's choice-of-law rules, the law of a state other than Oregon governs the issues in this action.

### C. *Eiler is entitled to reject the term sheet.*

In considering a trustee's proposed rejection of an executory contract, a bankruptcy court need engage in "only a cursory review of a trustee's decision to reject the contract. Specifically, a bankruptcy court applies the business judgment rule to evaluate a trustee's rejection decision . . . ."[52] A "bankruptcy court should presume that the debtor-in-possession [which, under 11 U.S.C. § 1107(a), has the right, powers, and duties of a trustee] acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interest of the estate."[53] The court should disapprove an action only if the court finds that the trustee's "conclusion that rejection would be 'advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.'"[54]

Eiler justifies his proposed rejection because (1) Thrivify's bare ground that the term sheet would require be encumbered in favor of Retrac is unencumbered and likely the primary source of recovery for unsecured estate

---

[52] Durkin v. Benedor Corp. (*In re* G.I. Industries, Inc.), 204 F.3d 1276, 1282 (9th Cir. 2000).
[53] Agarwal v. Pomona Valley Med. Grp., Inc. (*In re* Pomona Valley Med. Grp., Inc.), 476 F.3d 665, 670 (9th Cir. 2007).
[54] *Pomona*, 476 F.3d at 670, quoting Lubrizol Enterprises, Inc. v. Richmond Metal Finishers (*In re* Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1047 (4th Cir. 1985).

Page 10 – MEMORANDUM DECISION AFTER TRIAL

creditors, and (2) in Eiler's business judgment, rejection of the term sheet and preservation of the bare ground is in the estate's best interest. Revivify and Carter objected to rejection, arguing that the court should either defer action on the rejection motion until after ruling on this action or deny rejection because the estate and "the vast majority of its creditors" would receive "substantial benefits" from assumption.[55] Both the Revivify/Carter objection and Eiler's reply acknowledged that the term sheet obligates Thrivify to grant releases. Eiler has, in a reply brief[56] and at the August 5 hearing, adhered to his position that rejection is in the estate's best interest—even after specifically considering the potential benefits of assumption identified by plaintiffs.

I cannot defer action on the rejection motion, because the availability of some of the relief sought in this action depends on whether the trustee assumes or rejects the term sheet, as I explain below. Plaintiffs have not overcome the presumption that Eiler has acted prudently, on an informed basis, in good faith, and in the honest belief that rejection is in the estate's best interest. Nor have they demonstrated that his conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.

---

[55] No. 23-30538 ECF No. 125 at 2.
[56] No. 23-30538 ECF No. 130 at 2.

Page 11 – MEMORANDUM DECISION AFTER TRIAL

### D. *Plaintiffs are not entitled to any of the remedies they seek.*

Although plaintiffs seek four types of relief, they primarily seek specific performance of the term sheet, and they secondarily seek breach damages.

#### 1. Plaintiffs are not entitled to specific performance of the term sheet.

The term sheet requires a "full and complete release of all claims, known or unknown, between each and all of the parties to this agreement . . .." Because Thrivify is a term-sheet party, consummation of the settlement would require it to release all claims against the other parties.

Because Thrivify is a debtor in bankruptcy, claims it held before the petition date are property of the bankruptcy estate.[57] The sole estate representative is the trustee, Eiler.[58] A judgment awarding relief against Thrivify itself would be meaningless, because Thrivify is not the real party in interest and could neither pay damages nor comply with the term sheet if ordered to do so. Plaintiffs and Eiler both proceed as though the complaint requests relief against the estate, not just Thrivify as debtor, and that the relief sought against the estate cannot be granted if Eiler can reject the term sheet. Revivify has evinced that understanding by causing Thrivify (through Mark) to schedule the term sheet as an executory contract, albeit also as an asset; the Adolfs and Revivify have done so by proposing in their revised

---

[57] 11 U.S.C. § 541(a)(1).
[58] 11 U.S.C. § 323(a).

Page 12 – MEMORANDUM DECISION AFTER TRIAL

longform agreement filed as a demonstrative trial exhibit[59][OBJ] that Eiler sign it on behalf of Thrivify; and Revivify and Carter have done so by engaging with Eiler's motion to reject the term sheet as though the term sheet is in fact an executory contract, albeit one that in their view should be assumed. Eiler has evinced the same understanding by answering the complaint and raising as defenses his claimed rights to reject the term sheet and avoid any transfer it effected under 11 U.S.C. § 544(b) and by moving to reject the term sheet, which the parties acknowledged at trial. No other parties have taken any contrary positions.

That the estate has claims against one or more defendants is more than a theoretical possibility. In one of the three pending state-court actions, Thrivify asserts claims against TDLS and the Thrive LLCs for at least $2.5 million and alludes to a claim against Clutch. And in Thrivify's bankruptcy asset schedules, it echoes the state-court allegation against Clutch by asserting a claim against it for as much as $5 million.

Plaintiffs argue that "no party has direct claims against Clutch" and that Thrivify has only "defensive set-off claims against Clutch."[60] Although the schedule entry says that the claim is "to be utilized, among other things, for setoff against Clutch and Blackburn claims," plaintiffs have not pointed to

---

[59] ECF No. 89-1 Tr. Ex. 203 at 11 (preamble to longform agreement), 12 Recital I
[60] ECF No. 86 at 14 ¶ 10.

Page 13 – MEMORANDUM DECISION AFTER TRIAL

any reason why the estate would be limited to asserting that claim as one for setoff rather than a direct claim against Clutch.

Plaintiffs also argue that their removal of Clutch as a party to the longform agreement was immaterial. They reason that Chris owns or controls Clutch and, in the settlement, would own or control Thrivify and thus be "in control of claims Thrivify may have against Clutch."[61] But on closure of the settlement, Thrivify would not be owned and controlled only by Chris, even indirectly. According to both the term sheet and the longform agreement, TDLS, controlled by Hoover, and Thrive 1967, controlled by Sean, is and would remain a Thrivify member. Thus, Chris, as the indirect controller of a less than all the membership interests in Thrivify, could not simply cancel Thrivify's claim against Clutch. Even if the settlement would give Chris indirect ownership of all Thrivify membership interests, because Thrivify is in bankruptcy and is not the estate representative, he again could not simply cancel Thrivify's claims against Clutch; Thrivify (as debtor) would first have to acquire the claims, either by obtaining dismissal of the bankruptcy or persuading Eiler to abandon the claims.

Under 11 U.S.C. § 101(5)(b), a right to specific performance that accrues before the petition, and for which substantive law also authorizes a monetary remedy, is a claim. In any case, under 365(g), a cause of action for specific performance that accrues from contract rejection, which is treated as a

---

[61] ECF No. 86 at 14 ¶ 10.

Page 14 – MEMORANDUM DECISION AFTER TRIAL

breach, is also a claim. In neither case can the claimholder seek any remedy against the trustee or the estate except by filing a proof of claim. The Bankruptcy Code's overall structure makes clear that, absent contract assumption, filing a proof of claim is the only remedy for a claim. To allow creditors to assert and collect claims in other ways would frustrate the process of distributions under 11 U.S.C. §§ 726, 1326(d), and 1226(c), among others.

Because the code provides the same treatment of both rights to payment and rights to equitable relief for which monetary relief is available, the proposition that creditors cannot seek remedies against the estate outside the claims-allowance process necessarily applies to creditors who prefer to seek an equitable remedy. The code does not allow them to seek any remedy except through a proof of claim.

Although plaintiffs may as a practical matter be indifferent to whether the estate performs Thrivify's obligation to release defendants, that performance is a condition to performance of defendants' obligations, and under Oregon law, the existence of an unsatisfied contract condition precedent can preclude specific performance.[62] Thus, plaintiffs are not entitled to the specific performance they want from defendants—primarily, the purchase of their membership interests— unless plaintiffs are also entitled to relief compelling the estate to perform Thrivify's obligations,

---

[62] Cessnun v. Daily, 194 P.3d 861, 865 (Or. App. 2008).

Page 15 – MEMORANDUM DECISION AFTER TRIAL

including to release defendants. Plaintiffs' right to equitable relief against Thrivify either arose before the petition date, in which case it is reduced to a claim under 101(5)(b), or it will arise when Eiler rejects the term sheet, in which case it will be reduced to a claim under 365(g). In either case, absent assumption of the term sheet, plaintiffs' right to Thrivify's performance is a claim and can only be pursued through the proof-of-claim procedure.

Thrivify's required release of claims against other defendants is a material condition of the term sheet, and because Eiler is entitled to reject the term sheet, the release is impossible. Because that condition cannot be satisfied, plaintiffs cannot enforce the term sheet against defendants by specific performance.

Because plaintiffs' entitlement to specific performance in this action turns on Eiler's entitlement to reject the term sheet, it would not have been possible for me to postpone ruling on the rejection motion until after ruling on the claims in this action.

### 2. Plaintiffs cannot recover damages from defendants.

The complaint requests a money judgment against all defendants for more than $2.7 million. That amount is the sum of the payments to be made for the membership interests in Thrivify held by Retrac and Revivify. Although the complaint seeks that damage award against all defendants, had the transaction closed, the obligation to pay for the membership interests would have been owed by Thrive 1969 but not also the other defendants (Chris, Clutch, SAK, Sean, Steelhead, TDLS, and Thrive 1967).

Page 16 – MEMORANDUM DECISION AFTER TRIAL

The Adolfs and Revivify argue that the appropriate measure of damages would be the unpaid purchase prices. Implicit in that argument is that the membership interests to be sold are worthless. The trial record includes no specific evidence of the interests' value at any time, other than the purchase prices agreed to in the October 2022 term sheet. At the August 5 hearing, plaintiffs argued that the worthlessness of the membership interests is apparent from the closing of Eiler's sale. But even if the interests are now worthless, plaintiffs' damage (if they are entitled to seek breach damages) is not simply the $2.7 million price less the zero value of the membership interests. Instead, defendants are entitled to a credit against the price for the value of the promised release of claims by Thrivify. Thrivify has asserted claims against TDLS and the Thrive LLCs for at least $2.7 million and against Clutch for at least $5 million.

The record does not support a damage award.

### 3. Plaintiffs cannot recover from SAK or Thrivify.

Plaintiffs do not allege in the complaint, nor have they otherwise argued, that the term sheet is enforceable against SAK or Thrivify even if not against the other defendants. Because the term sheet is not enforceable against defendants other than SAK or Thrivify, it is also not enforceable against SAK or Thrivify.

### 4. I need not determine whether plaintiffs are entitled to declaratory judgment or reformation.

Plaintiffs' claim for declaratory judgment would, if successful, determine that the term sheet, the longform agreement, and the loan and security documents "constitute binding contracts." Because I have determined that no substantive relief is available to plaintiffs even if all those documents are binding contracts, I decline to exercise my discretion under 28 U.S.C. § 2201(a) to declare the parties' rights and obligations.

Plaintiffs' claim for reformation would, if successful (and necessary), bind Chris and Steelhead to the term sheet; it does not request relief distinct from that requested by the other claims.

## V. Conclusion

Because plaintiffs are not entitled to any of the remedies they seek, I will forgo discussion of whether the term sheet and the longform agreement are contracts that were formed and are otherwise enforceable by plaintiffs against defendants—and specifically whether there are conditions to defendants' obligations under the term sheet, in addition to Thrivify's required releases, that cannot be satisfied.

In this action, I will enter judgment for defendants, and in the main case I will grant Eiler's rejection motion. I will prepare the judgment and main-case order.

# # #