Below is an order of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| **Thrivify, LLC**, dba The Lodge in Sisters, LLC, | Case No. 23-30538-dwh11 |
| Debtor. | |
| **Revivify, LLC**, a Colorado limited liability company, et al., | Adv. Pro. No. 23-03027-dwh |
| Plaintiffs, | MEMORANDUM DECISION DENYING MOTION TO ALTER OR AMEND JUDGMENT[1] |
| v. | |
| **Thrivify LLC**, an Oregon limited liability company, et al., | |
| Defendants. | |

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION DENYING MOTION TO ALTER etc.

## I.      Introduction

Revivify LLC and Mark and Anita Adolf (whom I will call "plaintiffs" even though they are not all the plaintiffs) have moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), by way of Federal Rule of Bankruptcy Procedure 9023.[2]

Two groups of defendants have objected to the motion,[3] and a third group filed a "notice of joinder" to one of the two objections.[4]

For the reasons that follow, I will deny the motion.

## II.      Standard for altering or amending judgment

Rule 59(e) authorizes and fixes a time limit for a "motion to alter or amend a judgment." Although the rule itself says nothing about what a court should consider in ruling on such a motion, the Ninth Circuit has identified four circumstances in which it is appropriate to alter or amend a judgment: (1) where the alteration or amendment is necessary to correct a "manifest" or "clear" error of law or fact, (2) where the movant wishes to present newly discovered evidence, (3) where there has been an "intervening change in controlling law," and (4) where because of "highly unusual circumstances," the alteration or amendment is necessary to avoid "manifest injustice."[5]

_____

[2] ECF No. 108.
[3] ECF Nos. 116, 117.
[4] ECF No. 118.
[5] Turner v. Burlington N. Santa Fe R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003); Kona Enterprises, Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

Although a trial court has "considerable discretion when considering a motion . . . under Rule 59(e),"[6] amendment of a judgment is "extraordinary" and should be done "sparingly."[7]

Finally, Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."[8]

Plaintiffs argue that three of the four Rule 59(e) criteria are satisfied: manifest error, newly available evidence, and manifest injustice. They do not argue that there has been a change in the controlling law.

## III.    Interlude regarding summary-judgment ruling

The parties debate whether I ever actually determined that the term sheet is a "formed contract." I did expressly make that determination in my ruling on the summary-judgment motion, and I stand by it.[9] But defendants are correct that, because there was no cross-motion for summary judgment, I did not actually grant partial summary judgment on that question. . And even if I had done so, it would not obviate the reasons for my denial of the Rule 59(e) motion.

Plaintiffs complain that I did not enter a declaratory judgment on that point, but there was no need to do so; a declaratory judgment announcing the

---

[6] *Turner*, 338 F.3d at 1063.
[7] *Kona Enters.*, 229 F.3d at 890.
[8] Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008).
[9] ECF No. 64 at 7–10.

Page 3 – MEMORANDUM DECISION DENYING MOTION TO ALTER etc.

historical fact that the term sheet was a contract would be useless, given that I determined that no damages or injunctive relief was available. The declaratory-judgment statute is sometimes properly used to obtain a binding determination of certain legally relevant facts with the expectation that later litigation may ensue to pursue substantive relief. But when, as here, the request for declaratory judgment is combined with a request for substantive relief, and the request for substantive relief is denied on the merits, no purpose would be served by a declaratory judgment.

## IV.    Manifest error

Plaintiffs point to a number of what they consider to be manifest errors in my trial memorandum decision. Before I address these arguments, I will provide some context by briefly recapitulating what I decided in the trial memorandum decision. First, I determined that Kenneth Eiler, the trustee, who had moved to reject the term sheet that plaintiffs sought to enforce, was entitled to reject it.[10]

Second, because performance of the term sheet would have required Eiler to take steps that he was unwilling to take (granting releases and, possibly, granting a trust deed on property of the estate), and because his rejection of the term sheet made it impossible to compel him to take those steps, I determined that specific performance was not available as a remedy.

---

[10] ECF No. 96 at 10–11.

Third, I determined that the record did not allow me to award damages as a remedy, because there was insufficient evidence of the amount of plaintiffs' damages. I came to that conclusion because there was no evidence in the record of the value of the litigation claims that the term sheet required each party to release. Because the mutual releases were as much a part of the term sheet as the purchase of membership interests, I found it impossible to determine, even approximately, the amount of damage plaintiffs had suffered.

Finally, I declined to exercise my power under the Declaratory Judgment Act to make declaratory determinations of the parties' rights and duties under the term sheet and other alleged agreements. I declined to grant declaratory relief because I had already determined that all substantive relief must be denied, and no purpose would be served by declaring the existence or nonexistence of the contracts.

### A.    *That plaintiffs did not receive the purchase price does not entitle them to prevail.*

The first alleged manifest error is that "Plaintiffs received none of the purchase price[.]"[11] Plaintiffs do not point to any factual or legal error related to this statement. As they point out, the parties stipulated that plaintiffs did not receive any part of the purchase price. I did not find otherwise.

---

[11] ECF No. 108 at 9–10 ¶ 1.a.

Plaintiffs argue that, because of this undisputed fact, "[t]he Court clearly erred in concluding that . . . no substantive relief could be available to Plaintiffs."[12] As I explained earlier, no substantive relief is available to plaintiffs for two reasons. First, specific performance of the agreement is impossible because one of the parties to the agreement is now immune from that remedy. Second, although damages were potentially available, the evidence was insufficient to determine what if any damages plaintiffs suffered. Although plaintiffs did not receive the purchase price, they also were not compelled to release claims against defendants, as they would have had to do if the term sheet were performed. Because the value of the claims that plaintiffs would have been compelled to release is unknowable, I could not quantify their damages.

This was not a manifest error.

## B. The GNCU loan shortfall does not evidence liquidated guaranty damages.

The second alleged manifest error is that "[t]he GNCU loan shortfall of more than $6 million . . . is evidence of liquidated guaranty damages . . . ."[13]

The Blackburn defendants argue that this asserted injury is speculative, because there is no evidence that GNCU will attempt to collect against plaintiffs.[14] I won't resolve this dispute, because a Rule 59(e) motion is not

---

[12] ECF No. 108 at 9–10.
[13] ECF No. 108 at 10 ¶ 1.b.
[14] ECF No. 116 at 8.

the proper place for litigating factual issues that could have been litigated at trial.[15] Suffice it to say that, even if it were certain whether and how much GNCU would collect from plaintiffs, I would still be unable to assign a dollar value to their damages for the reason I discussed earlier. T there is no evidence of the value of the claims that plaintiffs would be required to release if the term sheet were performed and thus whether they even suffered a net loss by the failure of performance. This is not a manifest error.

### C.    *The value of the membership interests, even if nothing, is not the correct damages measure.*

The third alleged manifest error is that "[t]he purchase price is the correct measure of damages because the record is clear that the membership interests are now worthless."[16]

Again, this is not a manifest error because of the offsetting benefit to plaintiffs of being relieved of the obligation to release claims of unknown value.

### D.    *That Thrive 1969 would have paid for the membership interests had the transaction closed did not prevent plaintiffs' damage recovery.*

The fourth alleged manifest error was "concluding that the purchase price of settlement contract could be collected only from Thrive 1969."[17]

In the memorandum decision, I wrote: "Although the complaint seeks [a] damage award against all defendants, had the transaction closed, the

---

[16] ECF No. 108 at 10–12 ¶ 1.c.
[16] ECF No. 108 at 10–12 ¶ 1.c.
[17] ECF No. 108 at 12–14 ¶ 1.d.

obligation to pay for the membership interests would have been owed by Thrive 1969 but not also the other defendants . . . ."[18] Plaintiffs point out that other parties to the term sheet had obligations that they did not perform, and the failure to perform those obligations might have given rise to damages.

I accept that this is correct in principle, and in fact the above quotation from the memorandum decision does not contradict it. I said there that Thrive 1969 would have paid the purchase price *had the transaction closed*, and I stand by that statement as an accurate characterization of the term sheet. I did not say that there could be no set of circumstances in which the breach of the other parties' obligations might give rise to damages. The reason I was unable to award damages against any defendant was not that Thrive 1969 was the party that would have paid in the event of full performance; the reason was that the record does not contain enough evidence to support an award of damages, because the extent of plaintiffs' injury was unproven.

### E.    The estate's releases are material.

The fifth alleged manifest error was "concluding that the estate's releases are material."[19]

Plaintiffs argue that the claims held by debtor before the petition date, which debtor was required by the term sheet to release, have no conceivable

---

[18] ECF No. 96 at 16.
[19] ECF No. 108 at 14 ¶ 1.e.

Page 8 – MEMORANDUM DECISION DENYING MOTION TO ALTER etc.

value—presumably meaning that debtor's obligation to give releases was worth nothing, and the fact that debtor cannot be made to give those releases (because the trustee has rejected the contract) therefore does not detract from defendants' obligation to perform. Plaintiffs assert that Case No. 20CV43877, the state-court civil action in which the parties to the term sheet had asserted unknown claims against each other, was dismissed before the petition date. For this proposition, plaintiffs cite ECF No. 66, § 7.2.[20] That citation is apparently to ECF No. 66 in the main case, which includes debtor's statement of financial affairs, in which part 7 lists "legal actions or assignments." Part 7.2 lists that action, calling it "Concluded." But the term sheet requires *all* parties to release *all* claims against all other parties; the release is not limited to claims that were or could have been asserted in that state-court action.

Plaintiffs also argue that debtor's claims against other term-sheet parties were "defensive only," but I see no need to reconsider that argument. A claim is a claim; unless it is barred by a statute of limitations (which plaintiffs do not suggest), it can be asserted offensively as well as defensively (that is, as a defensive offset). Even if the claim could not have been asserted offensively, giving up a potential defense in litigation is still a valuable concession and cannot be presumed to be worthless and therefore immaterial.

---

[20] ECF No. 108 at 14 ¶ 1.e.

Page 9 – MEMORANDUM DECISION DENYING MOTION TO ALTER etc.

### F. The lack of evidence of the value of the claims that would have been released makes it impossible to quantify the plaintiff's damages

The sixth alleged manifest error is that "[t]he Court clearly erred in holding that Defendants are entitled to a credit against Plaintiffs' purchase price damages for the value of the estate's promised releases."[21]

Plaintiffs dispute that "a non-breaching, non-debtor party" must "pay for damages caused by a debtor's breach." They argue that my memorandum decision "conclude[s] that the existence of such a credit, in any amount, nullifies Plaintiffs' damages."

I agree that plaintiffs were not required to "pay for damages caused by debtor's breach." But a prevailing plaintiff in a contract action ordinarily receives damages in an amount that will restore the plaintiff to the position it would have occupied if no breach had occurred—that is, it should receive the benefit of its bargain, as if the contract had been performed. The court must determine both what the plaintiff would have gained under the contract and also what the plaintiff would have had to give up.

If the term sheet had been performed, plaintiffs would have received the purchase price of $2.7 million, and they would have been relieved of their guaranty and of any liability on any claims that the other parties could have asserted against them, while they would have had to give up their membership interests plus all claims that they had against any other party.

---

[21] ECF No. 108 at 14–15 ¶ 1.f.

Plaintiffs argue that the membership interests were worth nothing, so they would have been no worse off for having given them up. But, as I've noted before, the only way to quantify their damages would be to determine the value of the litigation claims that all parties would have been required to release—a value that cannot be presumed to be zero, but that cannot be determined on this record because there is no evidence of the nature or value of those claims. The point is not that the releases "nullify" the plaintiffs' damages; the lack of evidence of the value of the claims that would have been released makes it impossible to quantify the plaintiff's damages. In fact, because the value of the claims that each party would have had to release is unknowable on this record, I cannot even rule out that the plaintiffs would have lost more net value through the mutual release of claims than they would have gained from the sale of their membership interests.

## G. The trustee's rejection of the agreement bars enforcement of the agreement against parties who are deprived of debtor's performance, including debtor's claim releases.

The seventh alleged manifest error was "holding that the estate's rejection deprives non-debtor parties of prepetition contractual rights."[22]

This argument mischaracterizes my trial holding. I agree that the trustee's rejection of the term sheet did not deprive the other parties to the term sheet of all of their rights under it. When a bankruptcy trustee rejects a

---

[22] ECF No. 108 at 15–16 ¶ 1.g.

multilateral contract, this can have at least two possible consequences for other parties to the contract.

First, it may alter their substantive duties under the contract. Contracts are often performed in stages, with one party's performance becoming due only after another party has performed—meaning that the later performance may be excused if the earlier-required performance does not happen. If the trustee's performance was due earlier than another party's performance, but the trustee rejects the contract and refuses to perform, it's possible that the other party's performance will never become due. This possibility does not apply here, however.

Second, rejection may leave the other parties' substantive rights and duties unaffected, but it may nevertheless affect their *remedial* rights. Section 365(g) of title 11, U.S. Code, limits the remedies against the estate available to a counterparty to a contract that the trustee has rejected. Specifically, it provides that a counterparty injured by the trustee's rejection is limited to a claim against the estate, which is deemed to have arisen prepetition. Although section 365(g) doesn't say this explicitly, it implicitly bars the remedy of specific performance against a trustee who has rejected a contract—and many decisions say so, as the Clutch defendants correctly summarize in their responsive brief.[23]

---

[23] ECF No. 117 at 5–6.

Granted, section 365(g) applies only with respect to remedies against the estate. Perhaps a court in an action to enforce a multilateral contract could order specific performance against some defendants while ordering mere damages against others. But I'm aware of no precedent for that approach. Nor would it be easy to reconcile that approach with general equitable principles, which authorize specific performance only when all other parties to the contract are ready, willing, and able to perform. Here, the trustee is unwilling to perform and, because of section 365(g), cannot be ordered to perform. I therefore deemed it inappropriate to order specific performance against other defendants.

Importantly, none of this is to say that the trustee's rejection took away the plaintiffs' rights under the contract. For practical purposes, it took away one possible remedy (specific performance), but it did not deprive them of substantive rights or of the ability to seek other remedies, damages. The reason that I did not award damages was not because of the rejection. Rather, as discussed earlier, it was because the evidence was insufficient to quantify the net harm, if any, that the plaintiffs suffered because the contract was not performed.

### H.    It was not manifest error not to award nominal damages.

Plaintiffs observe that I did not award nominal damages,[24] but they do not identify that omission as a manifest error.

_____

[24] ECF No. 108 at 3.

Oregon law on the availability of nominal damages is unclear. Through the early 20th century, Oregon courts held that nominal damages were routinely available in contract actions where the plaintiff proved a breach of contract but did not prove damages. For example, in the Oregon Supreme Court's 1891 decision in *Sunnyside Land & Imp. Co. v. Willamette Bridge Ry. Co.*,[25] the court held that "nominal damages at least" were available when defendant had admitted breach of contract. In that court's 1936 decision in *Tom Lee, Inc. v. Pac. Tel. & Tel. Co.*,[26] it held that "the rule is well established that nominal damages may be recovered for the bare infringement of a right unaccompanied by any actual damage." And in that court's 1952 decision in *Hall v. Cornett*,[27] it listed "breach of contract where no actual damages are suffered" as one of the circumstances in which nominal damages are appropriate.

But in a 1979 decision, *Dean Vincent, Inc. v. Krimm*,[28] the court affirmed a trial court decision that did not award nominal damages (the decision does not make clear whether the plaintiff had asked for nominal damages at all, but the trial court did not award them) on the ground that "[p]laintiff suffered no injury as a result of defendant's breach and it therefore has no ca[u]se of action." Because 1952's *Hall* held that nominal damages by

---

[25] 26 P. 835 (Or. 1891).
[26] 59 P.2d 683, 688 (Or. 1936).
[27] 240 P.2d 231, 235 (Or. 1952).
[28] 591 P.2d 740 (Or. 1979).

definition are awarded when the plaintiff did not suffer actual damages, the offhand statement in 1979's *Dean Vincent* that a plaintiff who does not suffer actual damages has "no cause of action" implies that nominal damages are no longer possible in any case under Oregon law.

Because *Dean Vincent* says nothing about the many earlier decisions holding that nominal damages are legally permissible, I'm reluctant to conclude that the court meant to overrule that entire body of law without acknowledging it. But given *Dean Vincent*, it is at least arguable that nominal damages cannot be awarded under Oregon law. So if my failure to award them was error, it was not "manifest" error and cannot be corrected on a Rule 59(e) motion.

For all these reasons, plaintiffs have not identified any manifest error of law or fact.

## V.    Newly discovered evidence

Plaintiffs ask that the following documents, which Eiler filed in the main case after the judgment in this action, be included in the record of this action:[30] Eiler's interim report,[31] report of sale,[32] and notice of intent to incur expenses,[33] all filed on August 8 after the August 5 final posttrial hearing in this action, and his monthly operating report filed on July 31.[34] They also

---

[30] ECF No. 108 at 17.
[31] No. 23-30538 ECF No. 198.
[32] No. 23-30538 ECF No. 201.
[33] No. 23-30538 ECF No. 204.
[34] No. 23-30538 ECF No. 194.

request that some earlier docket entries, which I referred to in the memorandum decision, be formally included in the record.

None of these items, if included in the record, would warrant an alteration or amendment of the judgment. None would change the fact that the record does not contain enough evidence of the expected benefits and burdens of the settlement to enable me to make a meaningful determination of damages. Eiler filed the report of sale on the main-case docket on August 8, after the August 5 final posttrial hearing in this action.[35]

## VI.    Manifest injustice

Plaintiffs argue that Chris Blackburn "game[d] the system" and "manipulat[ed] the process" to produce the result in this action. They argue that this manipulation resulted in a manifest injustice. But they do not advance that manipulation as an alternative theory of relief if I reject their assertions of manifest error. They cite no authority that "manifest injustice" could warrant the alteration or amendment of a legally correct judgment.

I acknowledge that "manifest injustice" is routinely identified as one of the grounds on which alteration or amendment can be based, but I assume that there must also be a showing that the judgment was substantively incorrect. In other words, I don't think that Rule 59(e) allows a court to rely on a nonlegal interpretation of the concept of "justice" to reach a disturb a result that is legally correct.

---

[35] No. 23-30538 ECF No. 201; ECF No. 95.

Page 16 – MEMORANDUM DECISION DENYING MOTION TO ALTER etc.

I share the sense that plaintiffs likely deserve some compensation for defendants' failure to comply with the parties' contract. But the value of what the parties were supposed to exchange under the contract—and especially the value of the claims that all parties needed to release—could not be determined based on the trial record. After I concluded that specific performance was impossible, I had to try to quantify the net loss that the plaintiffs suffered because of defendants' failure to perform. But I could not make that factual determination without evidence of the nature and value of the litigation claims that the parties needed to release.

Plaintiffs also complain that the Blackburn defendants have unfairly benefited from this involuntary bankruptcy case. As plaintiffs acknowledge, they could have objected to the entry of an order for relief, but they chose not to.[36] Plaintiffs also could have continued the litigation in the state court or asked a state court to enforce the term sheet, but they chose instead to file an adversary proceeding under the "related to" jurisdiction of 28 U.S.C. § 1334(b). I have no doubt that they had legitimate, good-faith reasons for proceeding as they did. But it cannot be called a "manifest injustice" that their decisions turned out not to benefit them as they expected.

---

[36] ECF No. 108 at 2–3.

Page 17 – MEMORANDUM DECISION DENYING MOTION TO ALTER etc.

## VII.    Conclusion

I will deny the Rule 59(e) motion and ask that a hearing be set on the pending attorney-fee motions.[37]

### #

---

[37] ECF Nos. 101–03, 105.